HOWE, Judge:
¶1 The Navajo Nation appeals the juvenile court's order appointing a permanent guardian for a child subject to the Indian Child Welfare Act ("ICWA") without the testimony of a qualified expert witness that the parent's or the Indian-relative custodian's continued custody would likely result in serious emotional or physical damage to the child. We hold that ICWA applies to guardianships and that it requires a qualified expert witness to provide this testimony. Because such testimony was not provided in this case, we vacate the juvenile court's order and remand the case for a new hearing.
FACTS AND PROCEDURAL HISTORY
¶2 Whiteflutee Y. ("Mother") gave birth to R.Y. in September 2012. The Department of Child Safety removed R.Y. from Mother's care in August 2014 alleging neglect and substance abuse. Mother had become impaired, allegedly by methamphetamine, and threatened to kill a man who lived in her home. She waved a gun at the man and barricaded herself in the home with R.Y. She was arrested for aggravated assault with a deadly weapon and the Department moved for dependency. Because Mother is a member of the Navajo Nation, the dependency proceedings had to comply with ICWA. In April 2015, the court adjudicated R.Y. dependent.
¶3 In January 2017, Mother moved to appoint Natasha S., R.Y.'s foster placement, as R.Y.'s permanent guardian. Guardianship hearings were held over several dates beginning in March 2017. In June 2017, the Navajo Nation informed the court and parties that it would not actively oppose Mother's guardianship motion. It also stated, however, that the Navajo Nation's family services department would not provide the expert-witness testimony ICWA required and that Mother or the Department would need to provide an expert witness if Mother wished to proceed with the guardianship. The Department stated that it would attempt to schedule its own expert witness to testify.
¶4 In August 2017, the issue of expert-witness testimony was discussed again, and the court reiterated that such testimony was necessary to satisfy ICWA. But in September 2017, the Department informed the court and parties that its designated expert witness was unwilling to provide the requisite testimony for the guardianship. That same month, Mother proposed Ian Service as her expert witness. The Department took no position on Service's qualifications as an expert witness, but the Navajo Nation objected. The court held a voir dire hearing to determine whether Service was qualified.
¶5 During that hearing, Service testified that he had been an attorney for about ten years, mostly as a public defender or prosecutor in Idaho. He stated that 10 to 15 percent of his cases involved ICWA in some *985 way and that he had served as an expert witness in two cases. He admitted, however, that both cases were before the same judge and involved the Shoshone-Bannock Tribe-not the Navajo Nation. He also acknowledged that he was not a member of any Indian tribe, was not recognized as an expert witness by the Navajo Nation, had never been contacted by the Navajo Nation to testify as an expert witness, and was not familiar with the Navajo Nation's parenting customs. Service further stated that he had only minimally reviewed the record and that he had not talked to the proposed Indian-relative placement, R.Y., the Department's expert witness who had refused to testify, or the Navajo Nation case specialist assigned to this case.
¶6 Before determining if Service qualified as an expert witness, the court allowed him to testify that continued custody by Mother or the Indian-relative custodian would likely result in serious emotional or physical damage and that the guardianship was in R.Y.'s best interests. The court asked Service how he could come to such a conclusion when he had not seen R.Y. with the relative placement or with Mother. Service responded that although he had not read any of the reports, he had heard from Mother's attorney that visits with the relative placement had not gone well and that Mother was unable to parent due to her incarceration. At the hearing's conclusion, the court requested and received briefing on whether Service qualified as an expert witness. The court determined that he was not qualified.
¶7 At the hearing on the motion in December 2017, Mother testified that R.Y. should be placed with Natasha S., but no party presented qualified expert testimony whether Mother's or the Indian-relative custodian's continued custody would likely cause R.Y. serious emotional or physical damage. Nevertheless, the court found good cause to place R.Y. in a non-ICWA-preferred placement under 25 U.S.C. § 1915(b), which authorizes placement with a person or group unaffiliated with the Indian child's family or tribe, an Indian foster home, or any other Indian organization upon a showing of good cause. Without receiving any qualified expert-witness testimony regarding ICWA, the court then appointed Natasha S. as R.Y.'s permanent guardian. The Department and the Navajo Nation objected to the appointment because no qualified expert witness had testified. In January 2018, the court issued a nunc pro tunc order finding "good cause to deviate from the ICWA compliance requirement." The Department and the Navajo Nation jointly moved to reconsider because of the lack of expert-witness testimony, and the court denied the motion.
¶8 In June 2018, the court signed the order for permanent guardianship. In August 2018, the court reopened the time for appeal on the final order of permanent guardianship. Then in October 2018, the court signed a new order for permanent guardianship. The Navajo Nation timely appealed.
DISCUSSION
¶9 The Navajo Nation argues that the juvenile court violated ICWA by failing to require testimony from a qualified expert witness before making Natasha S. R.Y.'s permanent guardian. We review de novo the interpretation and application of ICWA. Michael J., Jr. v. Michael J., Sr. , 198 Ariz. 154, 156 ¶ 7, 7 P.3d 960, 962 (App. 2000). In doing so, "our task is to give effect to the will of Congress, and where its will has been expressed in reasonably plain terms, that language must ordinarily be regarded as conclusive." Steven H. v. Ariz. Dep't of Econ. Sec. , 218 Ariz. 566, 570 ¶ 14, 190 P.3d 180, 183 (2008) (quoting Negonsott v. Samuels , 507 U.S. 99, 104, 113 S.Ct. 1119, 122 L.Ed.2d 457 (1993) ). This Court will not reverse a guardianship order unless it is clearly erroneous. Jennifer B. v. Ariz. Dep't of Econ. Sec. , 189 Ariz. 553, 555, 944 P.2d 68, 70 (App. 1997). When reviewing a juvenile court's order for permanent guardianship, we accept its findings of fact unless reasonable evidence does not support them. Jesus M. v. Ariz. Dep't of Econ. Sec. , 203 Ariz. 278, 280 ¶ 4, 53 P.3d 203, 205 (App. 2002).
1. The Navajo Nation's Party Status
¶10 Natasha S. argues that the Navajo Nation waived its party status when it did not actively oppose her appointment as guardian. The record shows, however, that even though the Navajo Nation did not object *986 to Natasha's appointment, it still demanded that the court hear the requisite expert-witness testimony before making her R.Y.'s guardian. When the court did not do so, the Navajo Nation promptly objected. Thus, it did not waive its ability to argue this issue on appeal.
¶11 Similarly, she also contends that the Navajo Nation is no longer a party because the juvenile court has already resolved the foster care placement issue. This assertion is incorrect, however, because "[a]ny aggrieved party may appeal from a final order of the juvenile court to the court of appeals." Ariz. R.P. Juv. Ct. 103(A). The Navajo Nation was aggrieved by the juvenile court's failure to follow ICWA's expert-testimony requirement, which if left undisturbed would establish a precedent that the requirement need not be followed in future cases. Moreover, under ICWA, any Indian child, parent, Indian custodian, or tribe "may petition ... to invalidate [a foster care placement] upon a showing that such action violated any provision of sections 1911, 1912, and 1913 of this title." 25 U.S.C. § 1914. Thus, the Navajo Nation is a proper party on appeal.
2. ICWA Requires Expert-Witness Testimony
¶12 For child placement cases governed by ICWA, "[n]o foster care placement may be ordered in such proceeding in the absence of a determination, supported by clear and convincing evidence, including testimony of qualified expert witnesses, that the continued custody of the child by the parent or Indian custodian is likely to result in serious emotional or physical damage to the child." 25 U.S.C. § 1912(e). A "child custody proceeding" includes a "foster care placement," which in turn means:
any action removing an Indian child from its parent or Indian custodian for temporary placement in a foster home or institution or the home of a guardian or conservator where the parent or Indian custodian cannot have the child returned upon demand, but where parental rights have not been terminated[.]
25 U.S.C. § 1903(1)(i). In Arizona, a "court order vesting permanent guardianship with an individual divests the birth or adoptive parent of legal custody of or guardianship for the child but does not terminate the parent's rights." A.R.S. § 8-872(h).
¶13 Although ICWA does not explicitly recognize "permanent guardianships," a comparison of Arizona's statute for permanent guardianship and ICWA's definition for a "foster care placement" shows that ICWA applies in permanent guardianships. ICWA provides that a "foster care placement" involves (1) a child being placed in a guardian's home, (2) a parent's inability to demand custody, and (3) non-termination of the parent's rights. 25 U.S.C. 1903(1)(i). Likewise, Arizona's permanent guardianship statute involves (1) a child placed with a guardian, (2) a parent's loss of custody, and (3) non-termination of the parent's rights. A.R.S. § 8-872(h). Therefore, based on the statutes' plain language, ICWA applies to Arizona's permanent guardianship proceedings. Cf. Valerie M. v. Ariz. Dep't of Econ. Sec. , 219 Ariz. 155, 160 ¶ 16, 195 P.3d 192, 197 (App. 2008) (applying ICWA's burden of proof for permanent guardianships involving an ICWA child).
¶14 Section 1912(e) 's plain language states that no foster care placement, which includes permanent guardianships, may be ordered without expert-witness testimony on whether a parent's or an Indian-relative custodian's continued custody of a child will likely result in serious emotional or physical damage to the child. Therefore, a court must hear expert-witness testimony before ordering a permanent guardianship. The record shows that R.Y. was subject to ICWA and a guardianship proceeding took place. Thus, ICWA required the juvenile court to hear expert-witness testimony on whether Mother's or the Indian-relative custodian's continued custody of R.Y. would likely result in serious emotional or physical damage to R.Y.
¶15 Natasha S. argues that Mother was not a "party" in the guardianship and therefore not required to present expert-witness testimony. Mother, however, petitioned for guardianship, placing her custodial rights over R.Y. at issue. Thus, Mother was a party in this matter. Even if Mother had not been a party, ICWA still required the court to hear the requisite expert-witness testimony before appointing Natasha S. as guardian.
*987 Furthermore, Mother was not the only party that could have presented expert-witness testimony; the court could have subpoenaed the Department's expert witness to testify.
¶16 Natasha S. also argues that Mother had converted the involuntary dependency into a voluntary matter when Mother petitioned to appoint Natasha S. as guardian, thereby eliminating the need for expert-witness testimony. But all of the proceedings, including the guardianship, arose out of a state dependency action that the Department had initiated. Thus, despite Mother's motion, this was still an involuntary dependency action and required expert-witness testimony. Moreover, expert-witness testimony is required in voluntary child custody proceedings governed by ICWA. 25 U.S.C. §§ 1903(1)(i), 1912(e) ; 25 C.F.R. § 23.103(a)(1) (providing that ICWA applies to child custody proceedings, including involuntary proceedings and voluntary proceedings that could prohibit the parent from regaining custody of the child upon demand).
3. The Guardianship Proceeding Lacked Expert Testimony
¶17 The juvenile court received no testimony from a qualified expert witness supporting its guardianship decision. Although Mother proffered Service as a qualified expert witness under ICWA, the juvenile court found that Service was not qualified. The United States Department of the Interior Bureau of Indian Affairs provides nonmandatory guidelines ("Guidelines") to aid courts in interpreting ICWA. Brenda O. v. Ariz. Dep't of Econ. Sec. , 226 Ariz. 137, 140 ¶ 14, 244 P.3d 574, 577 (App. 2010). The Guidelines identify three types of witnesses likely to satisfy ICWA's requirement: (1) a member of the child's tribe who is knowledgeable in tribal customs as they pertain to family organization and childrearing practices, (2) a person who has substantial experience in providing child and family services to Indians and extensive knowledge of prevailing social and cultural standards and childrearing practices within the child's tribe, and (3) a professional person with substantial education and experience in a specialty area. Id. In cases in which "cultural mores" are not involved, an expert witness need not have cultural knowledge or experience. Rachelle S. v. Ariz. Dep't of Econ. Sec. , 191 Ariz. 518, 521, 958 P.2d 459, 462 (App. 1998) (concluding that an infant's physician who had treated more than 60 infants for shaken-baby syndrome had sufficient expertise to testify about the emotional or physical risk of harm to the child if returned to the parents' care). We review a court's ruling on expert witness qualifications for an abuse of discretion. Rasor v. Northwest Hospital LLC , 244 Ariz. 423, 426 ¶ 10, 419 P.3d 956, 959 (App. 2018).
¶18 Although Service had been an expert witness in two other cases, the cases were before the same judge and involved a different tribe. Service was not a member of any Indian tribe and the Navajo Nation had never recognized or contacted him to testify as an expert witness. Further, he acknowledged having only minimally reviewed the record and had not met with the Navajo Nation case specialist, the Navajo Nation expert witness, the Indian-relative placement, or R.Y. before testifying. Thus, the facts reasonably support the court's finding that Service did not qualify as an expert witness in this case, and the court did not abuse its discretion in so finding.[1] Consequently, no qualified expert witness provided the requisite ICWA testimony.
¶19 Natasha S. contends that because good cause was found to deviate from ICWA's placement preferences, the court was able to appoint her as guardian without expert-witness testimony. She is incorrect. Although 25 U.S.C. § 1915(b) allows a court to select a placement outside of ICWA's preferred placements if good cause exists, that statute does not state that good cause may extinguish 25 U.S.C. § 1912(e) 's expert-witness testimony requirement. As such, the existence of good cause is irrelevant to whether *988 requisite expert-witness testimony is necessary.
¶20 Natasha S. also contends that the guardianship was in R.Y.'s best interests. Regardless whether the guardianship was in R.Y.'s best interests, an expert witness still needed to testify before the court could appoint a guardian. Because an expert witness did not provide the requisite testimony, thereby necessitating a remand, we need not address this issue.[2]
CONCLUSION
¶21 For the foregoing reasons, we vacate the juvenile court's guardianship determination and remand the case for a hearing with the requisite expert-witness testimony.

Mother mistakenly argues that the court did not abuse its discretion by allowing Service to testify as an expert witness under ICWA. The record shows that the court determined Service did not qualify as an expert witness. To the extent that Mother may be arguing that the court abused its discretion by finding that Service was unqualified, the record sufficiently supports the court's finding.

We acknowledge the frustration our concurring colleague expresses about the effect of ICWA's requirements on prolonging the resolution of R.Y.'s proper placement. Nevertheless, as our colleague fairly admits, ICWA requires this result, and we must follow the law regardless of our personal views on the correct outcome.