IN THE

# ARIZONA COURT OF APPEALS

DIVISION TWO

_____

IN RE GUARDIANSHIP OF C.M.

No. 2 CA-JV 2023-0133
Filed May 2, 2024

_____

Appeal from the Superior Court in Pima County
No. JD20210494
The Honorable Jane Butler, Judge Pro Tempore

**AFFIRMED**

_____

COUNSEL

Pima County Office of Children's Counsel, Tucson
By David Miller
*Counsel for Appellant Minor C.M.*

Megan Page, Pima County Public Defender
By David J. Euchner, Assistant Public Defender, Tucson
*Counsel for Appellee Katalina M.*

Kristin K. Mayes, Arizona Attorney General
By Dawn R. Williams, Assistant Attorney General, Tucson
*Counsel for Appellee Department of Child Safety*

## OPINION

Chief Judge Vásquez authored the opinion of the Court, in which Presiding Judge Eppich and Judge Gard concurred.

V Á S Q U E Z, Chief Judge:

¶1  Appellant C.M., born in August 2010, appeals from the juvenile court's order denying her motion for permanent guardianship filed under A.R.S. §§ 8-871 and 8-872. We affirm.

## Factual and Procedural Background

¶2  We view the facts in the light most favorable to upholding the juvenile court's ruling. *See Christy C. v. Ariz. Dep't of Econ. Sec.*, 214 Ariz. 445, ¶ 12 (App. 2007). In August 2021, Katalina M. and C.M.'s father were divorcing. Katalina was "drinking more than [she] should" have, and got into a "screaming fight" with her daughter, C.M. Katalina told C.M. to go to her grandmother's house and never return. C.M. began living with her grandparents.

¶3  In September 2021, C.M.'s grandparents filed a dependency petition alleging C.M. dependent as to Katalina primarily based on the August incident. The Department of Child Safety (DCS) substituted as petitioner and alleged C.M. was dependent as to Katalina "due to abuse and/or neglect."[1] When Katalina entered a no contest plea, the juvenile court found C.M. dependent as to her in March 2022, adopting a family reunification case plan. In January 2023, the court denied Katalina and DCS's joint motion for C.M. to be returned to Katalina and directed C.M. to file a motion for permanent guardianship. C.M. then filed a motion requesting her maternal grandparents be appointed her permanent guardians. Following a seven-part contested hearing, the juvenile court denied the motion. C.M. timely appealed, and we have jurisdiction. *See* A.R.S. §§ 8-235, 12-120.21(A)(1), 12-2101(A)(1); Ariz. R. P. Juv. Ct. 601(A).

---

[1]DCS also alleged, and the juvenile court later adjudicated, C.M. dependent as to her father. He is not a party to this appeal.

**Discussion**

¶4 We will affirm the juvenile court's ruling on a motion for permanent guardianship unless it is clearly erroneous. *See Jennifer B. v. Ariz. Dep't of Econ. Sec.*, 189 Ariz. 553, 555 (App. 1997). As applicable here, the juvenile court may establish a permanent guardianship if the guardianship is in the child's best interests and all of the following criteria are shown:

> 1. The child has been adjudicated a dependent child . . . .
>
> 2. The child has been in the custody of the prospective permanent guardian for at least nine months. . . .
>
> 3. If the child is in the custody of [DCS], [DCS] has made reasonable efforts to reunite the parent and child and further efforts would be unproductive. . . . [and]
>
> 4. The likelihood that the child would be adopted is remote or termination of parental rights would not be in the child's best interests.

§ 8-871(A). Of these elements, only the third is contested. The party seeking a permanent guardianship bears the burden of proof by clear and convincing evidence. *See* § 8-872(H).

¶5 In its denial order, the juvenile court found that C.M. had met her burden except as to § 8-871(A)(3)'s requirement that "further [reunification] efforts would be unproductive." The court noted that Katalina had "successfully completed all case tasks required by DCS" except for family therapy, in which C.M. "simply refuses to engage." Relying on *Desiree S. v. Dep't of Child Safety*, 235 Ariz. 532 (App. 2014), the court stated it was "unable to find by clear and convincing evidence that further reunification efforts would be unproductive."

¶6 On appeal, C.M. argues the "juvenile court committed legal error by applying *Desiree S.* to a guardianship adjudication." In *Desiree S.*, the mother appealed the order terminating her parental rights to her eleven-year-old child. 235 Ariz. 532, ¶¶ 6, 11. The mother "successfully completed all services offered by" DCS except for family counseling, which the mother was willing to attend but the child was not. *Id.* ¶ 9. She argued DCS had not proven that she "was incapable of parenting [the child] in the

near future." *Id.* ¶ 8. This court agreed with the mother that there was no evidence to support the juvenile court's finding that she would be unable to parent the child. *Id.* ¶ 11. We reasoned that the child's reluctance to participate in counseling with his mother could not, by itself, "support the court's finding that [m]other will be unable to parent her child in the near future." *Id.* ¶ 12. We further explained that while the child's reluctance and refusal to give his mother "an opportunity to parent might go to the court's determination of best interests," it "cannot demonstrate by clear and convincing evidence that she cannot parent in the near future." *Id.* ¶ 11.

¶7        As applied here, the juvenile court did not err by relying on *Desiree S.* to conclude C.M. had not met her burden of proving that further reunification efforts would be unproductive. C.M. correctly points out that termination and permanent guardianship proceedings have different requirements. For instance, she correctly notes that the fifteen-month time-in-care ground for termination requires, in part, a finding that a parent will be unable to exercise proper and effective parental care in the near future, A.R.S. § 8-533(B)(8)(c), whereas a permanent guardianship requires the court to find, in part, that further reunification efforts would be unproductive, § 8-871(A)(3). But both findings ultimately embrace whether family reunification is readily attainable. *See* § 8-533(B)(8)(c) (termination permissible if appropriate reunification services provided but parent has not remedied circumstances causing child to be in out-of-home placement and parent unable to exercise parental care in near future); § 8-871(A)(3) (guardianship permissible if, in addition to § 8-871(A)(1)-(2) requirements, reasonable reunification efforts provided and further efforts would be unproductive). And although *Desiree S.* is a severance case, the same "fundamental liberty interest of the natural parents in the care, custody, and management of their child" is at stake in guardianship actions brought under § 8-871. *Santosky v. Kramer*, 455 U.S. 745, 753 (1982); *see also Michael J. v. Ariz. Dep't of Econ. Sec.*, 196 Ariz. 246, ¶ 11 (2000); § 8-871(E) (permanent guardian vested with rights and responsibilities of "a custodial parent regarding the ward's support, care and education" (quoting A.R.S. § 14-5209)).

¶8        C.M. also asserts that by relying on *Desiree S.*, the juvenile court "improperly import[ed]" the "unable to parent in the near future" finding into the permanent guardianship context. C.M.'s argument ignores that she urged the court to waive the § 8-871(A)(3) requirement because Katalina is "unable to properly care for the child." § 8-871(A)(3)(b). That finding is substantially similar to the fifteen-month time-in-care termination requirement. *Compare* § 8-533(B)(8)(c) (requiring, for termination, showing that parent "will not be capable of exercising proper

and effective parental care and control in the near future") *with* § 8-871(A)(3)(b) (allowing, in guardianship proceedings, to waive reunification efforts where "the parent is unwilling or unable to properly care for the child"). Thus, because C.M. asked the court to consider Katalina's inability to properly care for C.M. to exempt her from proving that further reunification efforts would be unproductive, the court did not err in relying on *Desiree S.* to determine whether C.M.'s refusal to engage in family therapy could inform that determination. *See Desiree S.*, 235 Ariz. 532, ¶ 11 (eleven-year-old's refusal to participate in family counseling "cannot demonstrate by clear and convincing evidence that [mother] cannot parent in the near future").

**¶9**      C.M. nevertheless argues that contrary to *Desiree S.*, because the permanent guardianship statutes explicitly put the child's best interests at the forefront, a child's refusal to participate in reunification services should satisfy the finding that "further efforts would be unproductive." *See* § 8-871(A); *see also* § 8-871(D) ("In proceedings for permanent guardianship, the court shall give primary consideration to the physical, mental and emotional needs and safety of the child."). But her argument conflates the best-interests finding with the statutory requisites for establishing a guardianship. They are separate showings and findings. *See* § 8-871(A) ("The court may establish a permanent guardianship . . . if the prospective guardianship is in the child's best interests *and all of the following apply . . . .*" (emphasis added)). In sum, C.M.'s desire not to participate in family therapy or other reunification services may be relevant to her best interests and could inform whether further efforts would be unproductive. However, it does not follow that the juvenile court committed legal error by relying on *Desiree S.* to guide its analysis. Thus, the juvenile court did not err by concluding that C.M.'s refusal alone and without a reasoned basis was insufficient to establish that further reunification efforts would be unproductive.[2]

---

[2]Katalina urges us to go further and hold that § 8-871(A)(3) requires the juvenile court to find the parent at fault for the futility of further reunification efforts because "[a]ny other reading would put otherwise-capable parents at the mercy of their minor children's whims," "results in constitutional violations of the right to parent," and is "absurd." We decline to reach that question of statutory interpretation with constitutional implications because it has not been adequately briefed by the parties and we can resolve C.M.'s appeal on narrower grounds. *See Falcone Bros. & Assocs., Inc. v. City of Tucson*, 240 Ariz. 482, ¶ 11 (App. 2016); *Goodman v. Samaritan Health Sys.*, 195 Ariz. 502, ¶ 11 (App. 1999) ("It is

**¶10** Even if the juvenile court's reliance on *Desiree S.* was somehow error, C.M. cannot show that any error was reversible. C.M. contends the juvenile court "abused its discretion in finding that further reunification efforts would not be unproductive." She maintains that "[t]he evidence at trial clearly supported a finding that further reunification efforts would be unproductive because C.M. did not desire to return home and refused to engage in the family therapy process." As the trier of fact, the juvenile court "is in the best position to weigh the evidence, observe the parties, judge the credibility of witnesses, and make appropriate findings." *Jesus M. v. Ariz. Dep't of Econ. Sec.*, 203 Ariz. 278, ¶ 4 (App. 2002). Accordingly, when reviewing a guardianship order, "we accept [the juvenile court's] findings of fact unless reasonable evidence does not support them." *Navajo Nation v. Dep't of Child Safety*, 246 Ariz. 463, ¶ 9 (App. 2019).

**¶11** Sufficient evidence supports the juvenile court's finding that further reunification efforts could be productive. As the court noted, the only reunification service offered to Katalina that she did not successfully complete was family therapy, in which C.M. "refuses to engage," despite otherwise contacting Katalina on a regular basis and repeatedly asking to visit at Katalina's home. Three mental health practitioners and the family's assigned DCS case specialist testified that family therapy is a critical service for C.M. and Katalina to reunify. Further, although two previous referrals for family therapy had been closed out,[3] DCS referred Katalina and C.M. for family therapy with "one of the top" Ph.D-level psychologists in the area with "extensive training in trauma therapy." By the end of the contested hearing, Katalina had seen the new psychologist for individual sessions and was in the process of scheduling additional sessions. Further, two licensed psychologists testified that C.M.'s refusal to engage in family therapy does not preclude it from being attempted again nor does it rule out the

---

sound judicial policy to avoid deciding a case on constitutional grounds if there are nonconstitutional grounds dispositive of the case.").

[3]The first referral closed after two joint sessions because the provider left her practice. The second referral closed without any joint sessions, in part, because C.M. was "very consistent in that her only goal for family therapy was to get her mom to understand she is not her mom anymore" and the therapist felt it was not "safe or clinically appropriate to bring them in family therapy" under that circumstance. That therapist also believed that Katalina was unwilling to acknowledge C.M.'s trauma or "take accountability for her part in what happened."

possibility of its success. C.M. generally focuses on the evidence in the record that supports her position but fails to acknowledge the conflicting evidence in the record. But our role is not to reweigh evidence or judge credibility on appeal. *See In re Pima Cnty. Dependency Action No.* 93511, 154 Ariz. 543, 546 (App. 1987).

## Disposition

¶12　　　　We affirm the juvenile court's ruling denying C.M.'s motion for permanent guardianship.