NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

IN RE TERMINATION OF PARENTAL RIGHTS AS TO J.C.

No. 1 CA-JV 25-0064

FILED 10-01-2025

Appeal from the Superior Court in Yuma County
No. S1400JD202300060, S1400SV202400016
The Honorable Levi Gunderson, Judge *Pro Tempore*

**AFFIRMED**

COUNSEL

Elizabeth M. Brown, Phoenix
*Counsel for Appellant Father*

Arizona Attorney General's Office, Tucson
By Dawn R. Williams
*Counsel for Appellee Department of Child Safety*

**MEMORANDUM DECISION**

Judge Andrew J. Becke delivered the decision of the Court, in which
Presiding Judge David B. Gass and Judge Michael J. Brown joined.

**B E C K E**, Judge:

¶1        Johnny C. ("Father") appeals the superior court's order, terminating his parental rights as to J.C. ("Child").[1] For the following reasons, we affirm.

## BACKGROUND

¶2        Child was born in March 2023. The Department of Child Safety ("DCS") received a report that the mother ("Mother") tested positive for amphetamine during her admission to the hospital. She admitted to using methamphetamines three days before giving birth to Child. She also shared that Father was Child's father but could not provide DCS with his address or phone number. Child was sent to the Intensive Care Unit because Mother could not care for her.

¶3        That same day, DCS assessed Father at the hospital. He was 100% sure he was Child's father and signed Child's birth certificate. He also said he was enrolled with the Fort Yuma Quechan tribe (the "Quechan tribe") and lived on the Quechan reservation with his mother and two daughters from a previous relationship. He expressed interest in caring for Child "in the event the mother was not an appropriate caretaker." Father also shared he was enrolled in a substance abuse program through his tribe, admitted to "speed and weed" use five to seven years earlier, but denied current drug use. DCS requested a one-time drug test, but Father refused. He also denied any current criminal history or pending charges.

¶4        Father refused to cooperate with DCS, providing only a business card from his tribe's Indian Child Welfare Act ("ICWA") specialist. DCS contacted the ICWA specialist, who confirmed that Father was an enrolled member of the Quechan tribe but "[Child] did not qualify for enrollment." The Quechan tribe also provided Father's certificate of Indian blood, showing Father was an enrolled member of the tribe with 1/8 blood quantum and an affiliate of the Campo Kumeyaay Nation, the Torres Martinez Desert Cahuilla Indians, and the Cahuilla Band of Mission Indians.

---

[1] The superior court also terminated Mother's parental rights as to Child, but she is not a party to this appeal.

**¶5** When Child was three days old, DCS took her into temporary protective custody because Mother could not "stay awake to attend to [Child]," and medical staff found Mother "[a]sleep on her bed on top of [Child]."

**¶6** DCS notified Father of a team decision making meeting, but he did not attend. A representative of the Quechan tribe attended the meeting and shared that the tribe was not providing any services to the family.

**¶7** In November 2023, DCS moved to terminate Father's parental rights as to Child based on abandonment, substance abuse, a conviction with a lengthy sentence, and Child's out-of-home placement for more than six months. *See* A.R.S. § 8-533(B)(1), (3)–(4), (8)(b). DCS's motion said Child was placed with extended family, consistent with Child's best interests, and requested that the court terminate Father's rights so Child could be adopted.

**¶8** In March 2024, DCS reported that Father still had not provided any information regarding his substance abuse history or completed a drug test. DCS also said Father had not demonstrated he could raise Child in a drug- or crime-free home, recommended Child remain in its custody, and asked the court to find that it made reasonable efforts to eliminate Child's need for out-of-home placement.

**¶9** On June 12, 2024, DCS sent a notice via certified mail to Father's other three affiliated tribes and the Bureau of Indian Affairs ("BIA") of the child custody proceeding involving Child. The notice informed the tribes of Father's tribal affiliation and that Child may be subject to ICWA.

**¶10** On June 28, 2024, DCS petitioned to terminate Father's parental rights as to Child based on the same grounds listed in its motion for termination. *See* A.R.S. § 8-533(B)(1), (3)–(4), (8)(b). That same day, DCS sent another notice to the four tribes, informing them of its petition to terminate Father's parental rights as to Child.

**¶11** On January 23 and 24, 2025, the superior court held a termination adjudication hearing. Father testified that Child was not eligible for membership with the Quechan tribe. He also confirmed he was not a member of the Campo Kumeyaay Nation, the Torres Martinez Desert Cahuilla Indians, or the Cahuilla Band of Mission Indians.

¶12          At the time of the termination adjudication hearing, Father was serving a prison sentence for attempted possession of methamphetamine for sale he committed on February 22, 2023, less than a month before Child's birth. During the hearing, Father, then 40 years old, testified that he first used methamphetamine at age 19. He shared that he had participated in a tribal substance abuse program at least three or four times within the past 20 years. He was also in a Yuma County substance abuse program but never successfully completed it. Father confirmed he had been incarcerated for drug-related offenses on three prior occasions, the most recent of which ended in 2022.

¶13          On April 14, 2025, the superior court filed its termination order. The court found that, although Father is an enrolled member of the Quechan tribe, Child was not eligible for enrollment. The court also found that Child is not an Indian child as defined by ICWA. Because Child is not a member of any tribe and is not eligible for membership in the Quechan tribe, the court found that ICWA did not apply.

¶14          The court determined that DCS sent written notices inquiring about tribal membership to three other tribes: the Campo Kumeyaay Nation, the Torres Martinez Desert Cahuilla Indians, and the Cahuilla Band of Mission Indians. Each tribe received DCS's notice but none responded. DCS also sent a notice to the BIA; BIA received the notice but also did not respond.

¶15          The superior court further found that at the time of the termination adjudication hearing, Father had six or seven prior felony convictions, almost all of which were methamphetamine related. The court noted he had already spent approximately 13.5 years of his adult life in prison. Upon Father's most recent release from custody in 2022, he was placed on community supervision. During that period of community supervision, the court observed Father failed to complete substance abuse treatment and had tested positive for methamphetamine. The court further found Father's testimony that he had been sober from drug use for several years was not credible. The court also found Father's pattern of drug-related offenses, followed by incarceration and release, followed by additional drug-related offenses, had persisted for most of his adult life. The court concluded, by clear and convincing evidence, that DCS had proven Father was unable to discharge his parenting responsibilities due to chronic substance abuse, and that Father's condition would continue for a prolonged, indeterminate period.

¶16        The court terminated Father's parental rights as to Child after finding clear and convincing evidence supported four grounds: (1) abandonment, (2) chronic substance abuse, (3) length of incarceration, and (4) Child's out-of-home placement for more than six months. *See* A.R.S. § 8-533(B)(1), (3)–(4), (8)(b). By a preponderance of evidence, the court also concluded that termination of Father's parental rights was in Child's best interests. The court appointed DCS as Child's legal guardian and affirmed Child's current placement.

¶17        Father timely appealed, and we have jurisdiction under Arizona Revised Statutes §§ 8-235(A) and 12-120.21(A)(1).

## DISCUSSION

¶18        The issues before us are whether (1) the superior court erred in finding that DCS complied with ICWA's notice requirements, (2) reasonable evidence supported the court's findings for each of DCS's claimed grounds for termination under A.R.S. § 8-533(B), and (3) the court erred in finding that DCS made reasonable efforts to reunify Father and Child.

## I.        The Superior Court Did Not Err in Finding That DCS Complied with ICWA's Notice Requirements.

¶19        Father argues the superior court erred when it found that DCS complied with ICWA's notice requirements without verifying Child's tribal membership with all claimed affiliated tribes. Father asserts DCS only sent generic notices to the four tribes and the BIA without "meaningful inquiry."

¶20        We review questions of statutory interpretation and application of ICWA *de novo*. *Navajo Nation v. Dep't of Child Safety*, 246 Ariz. 463, 466, ¶ 9 (App. 2019).

¶21        Congress enacted ICWA in 1978 "to protect and preserve the integrity of America's Indian tribes, while also protecting the interests of Indian children." *Steven H. v. Ariz. Dep't of Econ. Sec.*, 218 Ariz. 566, 570, ¶ 12 (2008); *accord Matter of Guardianship of A.K.*, 258 Ariz. 336, 341, ¶ 4 (App. 2024); *see also* 25 U.S.C. § 1902.

¶22        ICWA applies to any "child custody proceeding" involving an "Indian child." *Michael J., Jr. v. Michael J., Sr.*, 198 Ariz. 154, 156, ¶ 9 (App. 2000). A "child custody proceeding" includes a "termination of parental rights," meaning any action that results in the termination of a parent–child relationship. 25 U.S.C. § 1903(1)(ii). An "Indian child" is one who "is either

(a) a member of an Indian tribe or (b) is eligible for membership in an Indian tribe and is the biological child of a member of an Indian tribe." *Id.* § 1903(4); *accord* Ariz. R.P. Juv. Ct. 302(d)(2).

**¶23** When any court "knows or has reason to know that an Indian child is involved," the party seeking to terminate the child's parent's parental rights must "notify the parent . . . and the Indian child's tribe, by registered mail with return receipt requested, of the pending proceedings and of their right of intervention." 25 U.S.C. § 1912(a). ICWA does not require any other "meaningful inquiry." The record reflects that DCS notified the tribes as ICWA requires.

**¶24** Father correctly asserts that "[i]t is the tribes, not the court, that determine eligibility." "A tribe's right to define its own membership for tribal purposes has long been recognized as central to its existence as an independent political community." *Santa Clara Pueblo v. Martinez*, 436 U.S. 49, 72 n.32 (1978).

**¶25** But the court did not determine that Child was ineligible for tribal membership; the tribes made that determination. The Quechan tribe determined that Child was not eligible for membership because of blood quantum. Father has no more right to determine Child's tribal membership than the court does. That right belongs to the tribe.

**¶26** Father argues federal regulations, including the BIA Guidelines, have stated that a tribe's non-response to an ICWA notice "does not relieve the agency or court of its obligation" to continue to inquire whether there was reason to know a child may be an Indian child. But the BIA Guidelines are non-binding. *See Navajo Nation v. Ariz. Dep't of Econ. Sec.*, 230 Ariz. 339, 345, ¶ 19 (App. 2012) (observing courts may look to the BIA Guidelines for "non-binding guidance"). DCS notified the tribes about Child's custody proceedings twice in June 2024. Neither the tribes nor Father provided any additional information to the court to suggest that Child may be an Indian child. The termination adjudication hearing did not occur until January 2025, and the court entered its termination order in April 2025. Because none of the tribes took steps to intervene during that period, DCS properly complied with ICWA's notice requirements.

**¶27** Father asserts that "[t]ribal silence cannot be treated as denial." But he concedes that *Michelle M. v. Dep't of Child Safety*, 243 Ariz. 64 (App. 2017), held that ICWA does not apply when DCS notifies a tribe, and the tribe (1) responds that a child is not eligible for membership, or (2) does not respond. The court was provided no evidence that Child was an

Indian child, and therefore ICWA does not apply. *See id.* at 68, ¶ 15. Accordingly, the superior court did not err in finding that DCS complied with ICWA's notice requirements.

## II. Reasonable Evidence Supported the Superior Court's Findings Under A.R.S. § 8-533(B).

### A. A History of Chronic Substance Abuse

**¶28**     To support an order terminating parental rights, the superior court must find (1) at least one ground for termination under A.R.S. § 8-533(B) by clear and convincing evidence, and (2) termination is in the child's best interests by a preponderance of evidence. *Alma S. v. Dep't of Child Safety*, 245 Ariz. 146, 149–50, ¶ 8 (2018); *Crystal E. v. Dep't of Child Safety*, 241 Ariz. 576, 577, ¶ 4 (App. 2017). We accept the superior court's factual findings if reasonable evidence and inferences support them, and we affirm the court's legal conclusions about the statutory grounds for the termination unless clearly erroneous. *Brionna J. v. Dep't of Child Safety*, 255 Ariz. 471, 478–79, ¶¶ 30–31 (2023). We will not reweigh the evidence. *Alma S.*, 245 Ariz. at 151, ¶ 18 ("The appellate court's role is not to weigh the evidence." (quotation omitted)). And if we can affirm on one ground, we need not consider Father's challenge based on any other grounds. *Crystal E.*, 241 Ariz. at 578, ¶ 5.

**¶29**     We begin with the chronic substance abuse ground. Arizona Revised Statutes § 8–533(B)(3) permits termination of parental rights when a parent's history of chronic substance abuse renders the parent "unable to discharge parental responsibilities" and reasonable grounds exist "to believe that the condition will continue for a prolonged indeterminate period." To order termination on substance abuse grounds, the superior "court must also have found that [DCS] had made reasonable efforts to reunify the family or that such efforts would have been futile." *Jennifer G. v. Ariz. Dep't of Econ. Sec.*, 211 Ariz. 450, 453, ¶ 12 (App. 2005).

**¶30**     Here, reasonable evidence supports the superior court's conclusion that Father's chronic substance abuse prevents him from carrying out his parental responsibilities and that his condition will continue for a "prolonged indeterminate period." *See* A.R.S. § 8-533(B)(3).

**¶31**     Father has a decades-long history of methamphetamine abuse. He has numerous methamphetamine-related felony convictions and has been incarcerated for most of his adult life as a result. Upon his release from prison in 2022, Father failed to complete substance abuse treatment and tested positive for methamphetamine. Father committed yet another

methamphetamine-related crime just weeks before Child's birth. Then, four months after Child's birth, Father was again arrested for another drug-related offense.

**¶32**        Father asserts his rehabilitation efforts negate DCS's evidence of substance abuse. He claims that "[he] took substantial steps to address his substance abuse while incarcerated." He further argues the court did not find any evidence Father was currently using drugs or that his ability to parent was impaired. But evidence of Father's custodial sobriety does not negate the substantial evidence of his history of chronic substance abuse. And that evidence demonstrates that he was "unable to rise above his addiction in a non-custodial and unstructured setting, similar to that in which a father would be expected to raise his children." *Raymond F. v. Ariz. Dep't of Econ. Sec.*, 224 Ariz. 373, 379, ¶ 29 (App. 2010).

**¶33**        Father also argues DCS failed to provide him with reasonable reunification services after he was incarcerated, which impaired his ability to rebut DCS's claims about chronic substance abuse by demonstrating his progress in services. The superior court, however, found that DCS offered Father numerous reunification services, including visitation, case management services, case plan staffings, parent aide services, and drug testing. The court concluded that Father had failed to cooperate with those services. We agree. Reasonable evidence supports the superior court's conclusion that DCS made reasonable efforts to reunify Father and Child.

**¶34**        Because we affirm the court's order based on Father's chronic substance abuse, we do not address the other three grounds. *See Crystal E.*, 241 Ariz. at 578, ¶ 5 (citing *Jesus M. v. Ariz. Dep't of Econ. Sec.*, 203 Ariz. 278, 280, ¶ 3 (App. 2002) ("If clear and convincing evidence supports any one of the statutory grounds on which the [superior] court ordered [termination], we need not address claims pertaining to the other grounds.")).

### B.    Best Interests

**¶35**        We review a best-interests finding for an abuse of discretion and reverse only if "no reasonable evidence" supports the finding. *Mary Lou C. v. Ariz. Dep't of Econ. Sec.*, 207 Ariz. 43, 47, ¶ 8 (App. 2004). To support a best-interests finding, the superior court must find that either (1) terminating will benefit the child or (2) failing to terminate will harm the child. *Alma S.*, 245 Ariz. at 150, ¶ 13. The superior court found both to be true.

¶36 Reasonable evidence in the record supports the court's findings. Child has lived with her placement family since she was three days old, and the placement family indicated a willingness to adopt her. Father has not shown that he could provide for Child while incarcerated, nor has he shown the ability to remain drug- and crime-free outside a custodial setting. Child's out-of-home placement, where she has lived for almost her entire life, has benefited her with a safe and healthy home environment. The superior court thus did not abuse its discretion in finding that termination of the parent–child relationship was in Child's best interests.

## CONCLUSION

¶37 We affirm.



MATTHEW J. MARTIN • Clerk of the Court
**FILED**: JR